Thompson v Hall (2021 NY Slip Op 00695)





Thompson v Hall


2021 NY Slip Op 00695


Decided on February 5, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 5, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., NEMOYER, TROUTMAN, WINSLOW, AND BANNISTER, JJ.


435 CA 19-01782

[*1]JACQUELINE MARIE THOMPSON, PLAINTIFF-APPELLANT,
v
WALTER HALL, M.D., DEFENDANT-RESPONDENT. 






COTE & VANDYKE, LLP, SYRACUSE (JOSEPH S. COTE, III, OF COUNSEL), FOR PLAINTIFF-APPELLANT. 
GALE GALE & HUNT, LLC, SYRACUSE (CATHERINE A. GALE OF COUNSEL), FOR DEFENDANT-RESPONDENT. 


 Appeal from an order of the Supreme Court, Onondaga County (Gregory R. Gilbert, J.), entered April 2, 2019. The order granted the motion of defendant for summary judgment and dismissed the complaint. 
It is hereby ORDERED that the order so appealed from is unanimously modified on the law by denying the motion in part and reinstating the complaint, as amplified by the first amended bill of particulars, insofar as it asserts claims for medical malpractice with respect to negligence in the performance of both surgeries and treatment of postoperative complications, and as modified the order is affirmed without costs.
Memorandum: Plaintiff commenced this medical malpractice action seeking damages for injuries she allegedly sustained as a result of cervical fusion surgery performed by defendant. In 2013, plaintiff was involved in a motor vehicle accident and developed neck pain. Thereafter, defendant performed an anterior cervical fusion (first surgery). Plaintiff had no surgical complications after the first surgery and her neck pain seemed to be improving until February 2014, when she was involved in a second motor vehicle accident. After the second accident, plaintiff experienced increased neck pain, and defendant performed a posterior cervical fusion (second surgery). Plaintiff developed postoperative fluid accumulation around her cervical spine and was subsequently diagnosed with myelomalacia. Plaintiff now appeals from an order granting defendant's motion for summary judgment dismissing the complaint.
Initially, with respect to plaintiff's contention concerning her claim of breach of contract, that theory of liability was not raised in the complaint and "[a] bill of particulars may not be used to allege a new theory not originally asserted in the complaint" (Darrisaw v Strong Mem. Hosp., 74 AD3d 1769, 1770 [4th Dept 2010], affd 16 NY3d 729 [2011] [internal quotation marks omitted]; see Linker v County of Westchester, 214 AD2d 652, 652 [2d Dept 1995]).
Plaintiff further contends that Supreme Court erred in granting defendant's motion with respect to her claim that defendant failed to obtain her informed consent to perform the second surgery. We reject that contention. "To succeed in a medical malpractice cause of action premised on lack of informed consent, a plaintiff must demonstrate that (1) the practitioner failed to disclose the risks, benefits and alternatives to the procedure or treatment that a reasonable practitioner would have disclosed and (2) a reasonable person in the plaintiff's position, fully informed, would have elected not to undergo the procedure or treatment" (Orphan v Pilnik, 15 NY3d 907, 908 [2010]; see Gray v Williams, 108 AD3d 1085, 1086 [4th Dept 2013]).
Here, defendant met his initial burden of establishing his entitlement to judgment as a matter of law with respect to the claim of lack of informed consent by submitting deposition testimony and medical records demonstrating that he informed plaintiff of the reasonably foreseeable risks associated with the second surgery, confirmed that she understood those risks, [*2]and obtained her written consent (see Gray, 108 AD3d at 1086; see generally Tirado v Koritz, 156 AD3d 1342, 1344 [4th Dept 2017]). Contrary to plaintiff's contention, defendant did not raise an issue of fact himself by submitting plaintiff's deposition testimony, wherein she testified that defendant failed to advise her of his qualifications and explain that he had not previously performed the type of surgery that was recommended. A claim of lack of informed consent "is limited to the failure of the person providing professional treatment or diagnosis to disclose to the patient . . . alternatives to treatment, and [reasonably foreseeable] risks and benefits involved in treatment; it cannot reasonably be read to require disclosure of qualifications of personnel providing that treatment" (Abram v Children's Hosp. of Buffalo, 151 AD2d 972, 972 [4th Dept 1989], lv dismissed 75 NY2d 865 [1990]).
Furthermore, plaintiff failed to raise an issue of fact in opposition with respect to that claim. Plaintiff's opposing papers consisted only of letters of attestation and the affirmation of her expert neurosurgeon. Plaintiff's expert did not provide an opinion on the issue of informed consent, and the attestation letters were unsworn and thus not in admissible form (see Feggins v Fagard, 52 AD3d 1221, 1223 [4th Dept 2008]; Green v Gloede, 222 AD2d 1066, 1067 [4th Dept 1995]; Barrette v General Elec. Co., 144 AD2d 983, 983 [4th Dept 1988]).
We agree with plaintiff, however, that the court erred in granting the motion insofar as it sought summary judgment dismissing her claims for medical malpractice with respect to negligence in the performance of the two surgeries and treatment of the postoperative complications, and we therefore modify the order accordingly. With respect to the claim for medical malpractice relating to defendant's performance of the first surgery, the complaint, as amplified by the first amended bill of particulars, alleges that defendant's overall care and treatment of plaintiff deviated from the standard of care and proximately caused her injuries. Defendant satisfied his initial burden with respect to deviation and causation (see generally Bubar v Brodman, 177 AD3d 1358, 1359 [4th Dept 2019]) by submitting, among other things, the affirmation of his expert neurosurgeon, who opined that defendant did not deviate from good and accepted medical practice regarding conservative treatment, and that defendant's care and treatment of plaintiff did not proximately cause her any injury (see generally id.; Occhino v Fan, 151 AD3d 1870, 1871 [4th Dept 2017]). Thus, the burden shifted to plaintiff to raise a triable issue of fact in opposition to the motion (see generally Occhino, 151 AD3d at 1871). Plaintiff submitted the affirmation of her expert neurosurgeon, who opined, inter alia, that defendant deviated from the standard of care in recommending the first surgery, which was unnecessary, and that plaintiff suffered injury as a result of defendant's negligence in performing that surgery. Indeed, plaintiff's expert opined that conservative care had not been sufficiently followed, that plaintiff's level of pain and disability did not justify the risk of the first surgery, and that there were insufficient pathological findings to conclude that the benefits of surgery outweighed the risks. Thus, the conflicting opinions of the parties' experts with respect to defendant's alleged deviations from the accepted standard of medical care and proximate causation " 'present credibility issues that cannot be resolved on a motion for summary judgment' " (Fay v Satterly, 158 AD3d 1220, 1221 [4th Dept 2018]; see Moyer v Roy, 152 AD3d 1188, 1190 [4th Dept 2017]; see generally Lamb v Stephen M. Baker, O.D., P.C., 152 AD3d 1230, 1230 [4th Dept 2017]).
Defendant also met his initial burden on the motion with respect to the medical malpractice claim relating to his alleged negligence in performing the second surgery. Defendant established through the submission of deposition testimony, plaintiff's medical records, and the affirmation of his expert neurosurgeon that, by attempting conservative treatment and making a recommendation of surgery based on the MRI findings and plaintiff's persistent complaints after the second accident, he did not deviate from the applicable standard of care in performing that surgery and did not cause injury to plaintiff (see generally Bubar, 177 AD3d at 1359).
In opposition, however, plaintiff raised triable issues of fact in that respect by submitting the affirmation of her expert neurosurgeon, who opined, inter alia, that the second surgery was unnecessary and that defendant deviated from the standard of care in recommending that surgery because plaintiff had reported significant relief of her symptoms. We conclude that the conflicting expert opinions present issues of fact whether the second surgery was unnecessary and whether the performance of that surgery "caused an injury" (Moyer, 152 AD3d at 1190 [4th Dept 2017]; see Hatch v St. Joseph's Hosp. Health Ctr., 174 AD3d 1404, 1406 [4th Dept 2019]; see generally Alvarez v Prospect Hosp., 68 NY2d 320, 324-325 [1986]).
With respect to plaintiff's claim concerning defendant's alleged malpractice in negligently failing to provide adequate treatment for the postoperative accumulation of fluid around her spine, we conclude that defendant failed to meet his initial burden on the motion. The affirmation of defendant's expert was merely conclusory with respect to whether the fluid accumulation issue resolved prior to plaintiff's discharge (see generally Diaz v New York Downtown Hosp., 99 NY2d 542, 545 [2002]; Occhino, 151 AD3d at 1871; Toomey v Adirondack Surgical Assoc., 280 AD2d 754, 755 [3d Dept 2001]).
Entered: February 5, 2021
Mark W. Bennett
Clerk of the Court